UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIN VICKERS,

Petitioner,

v. Case No. 3:23-cv-963-JEP-LLL

SECRETARY, DEPARTMENT
OF CORRECTIONS,

Respondent.
_______________________________/

# **ORDER**

Petitioner Erin Vickers, an inmate of the Florida penal system, initiated this action on July 31, 2023, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). In the Petition, Vickers challenges a 2018 state court (Flagler County, Florida) judgment of conviction for sexual battery on a person less than 12 years of age, conspiracy to commit sexual battery on a person less than 12 years of age, five counts of transmission of child pornography, and five counts of promoting sexual performance by a child. Respondent submitted a memorandum in opposition to the Petition. (Doc. 11). Respondent also submitted exhibits. (Doc. 12-1). Vickers filed a brief in reply. (Doc. 14). This action is ripe for review.[1]

---

[1] When citing pleadings and exhibits, the Court will use the page numbers assigned

## I. PROCEDURAL HISTORY

The State charged Petitioner by a Fifth Amended Information with (Counts 1, 45–48) sexual battery on a person less than 12 years of age, (Counts 2–21) promoting sexual performance by a child, (Counts 22–41) transmission of child pornography, and (Counts 42–43, 49) conspiracy to commit sexual battery on a person less than 12 years old. (Doc. 12-1 at 139–45). The case went to trial only on Counts 1 and 20. A jury found Vickers guilty as charged. (*Id.* at 161–62).[2] Several months after the trial, Vickers signed a plea agreement in which she pleaded guilty to counts 2-6, 22-26, 43, and 46, and the State nolle prossed the remaining counts. (*Id.* at 197–201). The trial judge sentenced Vickers to life in prison. (*Id.* at 211–40). Vickers appealed, and the state appellate court affirmed without a written opinion. (*Id.* at 1136).

Vickers filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging three grounds of ineffective assistance of trial counsel. (*Id.* at 1156–63). After the State responded (*id.* at 1171–80), the state post-conviction court summarily denied Ground 1 and set an evidentiary hearing for the remaining two grounds, (*id.* at 1181–85). After the evidentiary hearing, the state post-conviction court denied the remaining two

by this Court's electronic docketing system.

[2] The Court referred to Count XX as Count II. (Doc. 12-1 at 162, 657).

grounds. (*Id.* at 1199–1262). Vickers appealed, and the state appellate court affirmed without a written opinion. (*Id.* at 1521). Vickers's section 2254 petition followed.

The evidence at trial showed that Vickers met Paul Dykes on an online dating site. (*Id.* at 822). They dated for some time and continued to communicate online. (*Id.* at 822–25). Eventually, Dykes told Vickers that he wanted to see her perform oral sex on her infant daughter. (*Id.* at 830).

During an interview with law enforcement, Vickers admitted she performed oral sex on her daughter four or five times. (*Id.* at 833). She also described how Dykes would watch and communicate with her while she was performing oral sex on her daughter. (*Id.* at 834–37). Photographs and video images of Vickers performing oral sex on her daughter were discovered on Vickers's and Dykes's cellphones, and on Dykes's laptop computer. (*Id.* at 737, 740, 749–50, 753). One of the videos was created on February 26, 2015, which was during the time charged in Count 1 of the Fifth Amended Information. (*Id.* at 140, 738–39). There were also "Skype" chats between Dykes and Vickers while Vickers was performing oral sex on her daughter. (*Id.* at 756–76). One of the chats took place on February 26, 2015. (*Id.* at 764–65).

**II. LEGAL STANDARD**

**A. AEDPA**

Pursuant to the Antiterrorism Effective Death Penalty Act, a federal court may not grant federal habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). *Williams*, 529 U.S. at 412–13, explains the meaning of each clause:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the

facts of the prisoner's case.

"[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).[3]

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, the state court's "determination of a factual issue...shall be presumed correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in

---

[3] In considering the "unreasonable application inquiry," the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

question, 'on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (citation omitted).

**B. Exhaustion and Procedural Default**

Before seeking habeas relief in federal court, a state prisoner must exhaust all state court remedies that are available for challenging his conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To do so, he must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust their claims, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), thereby alerting the appropriate state court of "the federal nature of the claim[s]," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *See also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process.").

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. Under the doctrine of procedural default:

> [A] federal court will not review the merits of claims,

> including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 747–48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (internal citations modified).

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once cause is established, "the petitioner also must show actual prejudice from the alleged constitutional violation." *Id.* (citing *Sykes*, 433 U.S. at 84). "[I]n order to show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Id.* (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)).

In the absence of a showing of cause and prejudice, a petitioner may still

receive consideration on the merits of a procedurally defaulted claim if he can show that a fundamental miscarriage of justice would occur:

> "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (internal citations modified).

"To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson*, 256 F.3d at 1171 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

**C. Ineffective Assistance of Trial Counsel**

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby

prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that (1) counsel's performance was outside the wide range of reasonable, professional assistance, and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Because both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id*. (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher

threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). In other words, "[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision—when [federal courts] are considering whether to grant federal habeas relief from a state court's decision." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689).

## III. DISCUSSION

### A. Grounds One through Thirteen

Vickers contends that she was denied the due process that the Fourteenth Amendment guarantees when the state trial court: 1) admitted the State's similar fact evidence with respect to the sexual battery allegations contained in Counts 45, 46, 47, and 48; 2) granted the State's request to amend

the information changing the date range on Count I; 3) overruled the defense objection to a video (State's exhibit #13); 4) allowed into evidence state exhibit #14; 5) allowed into evidence four pictures of sexual activity upon the victim as similar fact evidence; 6) allowed into evidence state exhibit #19 (copy of social media chats); 7) denied Vickers's motion for mistrial; 8) allowed Vickers's mother to testify about the identity of Vickers and the victim in state exhibits #13 and #14; 9) allowed into evidence the audio recording of Vickers's police interview; 10) denied Vickers's motion for mistrial based on the cumulative effect of the similar fact evidence allowed into evidence such that it became a feature of the trial; 11) denied Vickers's motion for judgment of acquittal as to Counts 1 and 20; 12) denied Vickers's objection to the exhibits concerning similar fact evidence going back with the jury during their deliberations; and 13) denied Vickers's motion for new trial. (Doc. 1 at 6–20).

Respondent contends that each of these grounds is unexhausted and now procedurally barred because Vickers never argued in state court that she was denied federal due process. (Doc. 11 at 18–19). The Court agrees.

Vickers raised similar claims in her Initial Brief before the Florida Fifth District Court of Appeal, which affirmed her convictions and sentences. (Doc. 12-1 at 1136). Significantly, Vickers's state court Initial Brief raised these claims only in the context of state law. (*See id.* at 1037–72). She made no

argument or reference to the United States Constitution or federal due process. (*See id.*). Because she did not fairly present the federal nature of her claims, she deprived the Florida Fifth District Court of Appeal of a meaningful opportunity to review them. *See Baldwin*, 541 U.S. at 29.

Even when the substance of a claim is identical under state and federal law, a petitioner still is required to put the state court on notice that her claim rests on a federal legal theory. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Pringle v. Sec'y, Fla. Dep't of Corr.*, 2024 WL 3936915, at *7–8 (11th Cir. 2024)[4] (finding that *Duncan* "forecloses Pringle's argument that the coextensive nature of the due process guarantees under the United States and Florida Constitutions alerted the state courts to the federal and state nature of her faulty jury instructions claim," and explaining that "petitioners must apprise the state courts of the federal nature of their claim, even if they present the substance of a federal claim"); *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (stating that "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim"). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due

---

[4] While not binding upon the Court, any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366. "It is not enough that all the facts necessary to support the federal claim were before the state courts, ... or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Vickers did not assert in her state court brief that she intended to raise a federal claim, and she did not mention federal due process or any federal constitutional provision. Thus, the Court concludes that Vickers failed to exhaust her state court remedies. *See Preston*, 785 F.3d at 458–59 & n.6 (concluding that petitioner failed to exhaust his state court remedies when he failed to (i) assert his intention to raise a federal claim, (ii) cite any federal cases or mention any federal constitutional provisions, and (iii) reference the case setting out the applicable federal legal standard for his claim, despite counsel suggesting at oral argument "for the first time . . . that [the petitioner had] couched his motion for judgment of acquittal before the trial court in terms of federal due process"); *see also Johnson v. Florida*, 32 F.4th 1092, 1096–97 (11th Cir. 2022) (concluding that a petitioner failed to exhaust his

state court remedies when he grounded his speedy-trial claim on state law and never cited the Sixth Amendment except in a motion to proceed pro se); *Pringle*, 2024 WL 3936915, at *5 ("Pringle's state court briefing referenced 'the Constitution or the laws of the United States' but otherwise presented the jury instruction claim as involving state law alone. This is insufficient to fairly present a federal claim to the state courts.").

Vickers's "failure to exhaust means that [her] federal claim[s] ha[ve] been procedurally defaulted." *Preston*, 785 F.3d at 462. Further, Vickers has not shown cause and prejudice,[5] or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the procedural default. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Therefore, her claims in

[5] In her reply, Vickers asserts entitlement to the "cause and prejudice" exception, contending that appointed appellate counsel "caused" the procedural default by failing to assert a federal claim on direct appeal. (Doc. 14 at 12). To the extent the basis for "cause" constitutes an independent constitutional claim—such as ineffective assistance of counsel—Vickers must have exhausted what she claims excuses her procedural default. "A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause' so long as the ineffective assistance 'occur[red] during a stage when a petitioner had a constitutional right to counsel' and the ineffective-assistance claim itself is 'both exhausted and not procedurally defaulted.'" *Sealey v. Warden, Georgia Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) (internal citations omitted). *See also Murray v. Carrier*, 477 U.S. at 488–89 (recognizing that, if ineffective assistance of counsel is alleged as cause to excuse a procedural default, the applicant must have presented the claim of ineffectiveness to the state courts as an independent claim); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) ("[P]rocedurally defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a[nother] claim.") (emphasis in original)). Vickers never presented to the state courts her claim that appellate counsel was ineffective for omitting the federal basis for Grounds One through Thirteen. Consequently, Vickers is not eligible for the "cause and prejudice" exception.

Grounds One through Thirteen must be denied as unexhausted and procedurally defaulted.

**B. Ground Fourteen**

Vickers argues she was denied effective assistance of trial counsel because her lawyer did not get a DNA rape kit examination of the victim. She asserts the results would have proved that she did not penetrate the victim's vagina.

Vickers raised this claim in her Rule 3.850 Motion, alleging her lawyer was ineffective for failing to have the victim tested with a DNA rape kit because it would have proved she never penetrated the victim's vagina. (*See* Doc. 12-1 at 1159). In its initial order denying this claim, the state post-conviction court set forth the *Strickland* standard and adopted the State's response to the claim. (*See id.* at 1182–83).

In its response, the State argued that Vickers showed no prejudice because the DNA rape kit would not have produced any evidence, because more than 72 hours had passed between the last sexual offense and the time the abuse was discovered. DNA evidence is not expected to be found in a rape kit if the last sexual encounter was more than 72 hours before the exam. (*See id.* at 1173–74). Moreover, the State argued that to convict Vickers of capital sexual battery, it was required to prove either penetration *or* union between

Vickers's mouth and the victim's vagina. (*Id.*); *see* Fla. Stat., § 794.011 (1) (j) ("Sexual battery" means oral, anal, or female genital penetration by, *or union with*, the sexual organ of another . . . .") (emphasis added). The evidence presented at trial included videos and photographs of Vickers putting her mouth on the victim's vagina, and Vickers's admission to law enforcement that she performed oral sex on the victim. (*See* Doc. 12-1 at 750, 864, 991). Thus, the DNA rape kit would not have contradicted the evidence of union. Nor would DNA evidence showing no penetration have affected the sentence because the mandatory sentence for capital sexual battery is life in prison, whether the act is penetration or union. *See Peters v. State*, 861 So. 2d 1236, 1237 n. 1 (Fla. 2d DCA 2003) (noting that in Florida, "[a] conviction for capital sexual battery carries a mandatory sentence of life imprisonment" (citing §§ 794.011(2)(a), 775.082(1), Fla. Stat. (1999))).

The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. (*See* Doc. 12-1 at 1521). The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's denial of Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to

the state court. *See* 28 U.S.C. § 2254(d).

Also, Vickers only speculates that the DNA rape kit would have established no penetration of the victim. She provides no evidence supporting her assertion. Self-serving speculation will not sustain a claim of ineffective assistance of counsel. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim); *Brown v. United States*, 2023 WL 11158245, at *1 (11th Cir. Nov. 6, 2023) (speculative claims are "insufficient to establish an ineffective-assistance claim." (citing *Tejada*, 941 F2d at 1559)). Ground Fourteen is denied.

**C. Ground Fifteen**

Vickers argues she was denied effective assistance of trial counsel because her lawyer told her she would receive only thirty years in prison if she went to trial. (*See* Doc. 1 at 21). She speculates that had she pleaded guilty or taken a plea, "she might have [fared] better than a life sentence." (*See id.*).

Vickers raised this claim in her Rule 3.850 motion, alleging her lawyer told her that if she proceeded to trial, she would receive only a thirty-year prison sentence. (Doc. 12-1 at 1160). The state post-conviction court held an evidentiary hearing, summarized the witnesses' testimony, and denied the claim as follows:

Under the *Strickland* standard, a defendant must satisfy deficiency and prejudice in order to prevail on an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). The deficiency prong requires a defendant to "show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,' and that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *State v. Jackson*, 204 So. 3d 958, 962 (Fla. 5th DCA 2016) (citing *Strickland*, 466 U.S. at 687). Additionally, in cases where a defendant alleges that based on counsel's misadvice the defendant rejected a favorable plea offer the defendant must demonstrate the four requirements of *Alcorn v. State*, 121 So. 3d 419 (Fla. 2013), that:

> (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Armstrong v. State*, 148 So. 3d 124, 126 (Fla. 2d DCA 2014).

In the instant case, the Court finds trial counsel's testimony more credible than Defendant's testimony. *See Santiago v. State*, 252 So. 3d 421, 422 (Fla. 5th DCA 2018) (During an evidentiary hearing, the trial court is tasked with making a credibility determination regarding the findings of fact.); *see also Moore v. State*, 458 So. 2d 61, 61 (Fla. 3d DCA 1984) (recognizing that at a rule 3.850 evidentiary hearing, the trial court is entitled to reject the defendant's testimony in favor of the conflicting testimony of trial counsel). Trial counsel met with Defendant nine times during the course of his representation and on each occurrence Defendant was engaged in the discussions about her case, asked appropriate questions, and understood the proceedings. The State never provided an offer to Defendant even after trial counsel attempted to obtain a reduction in the sentence or an amendment of the

> charges. Additionally, on January 10, 2017, while Defendant and trial counsel were present during a pretrial hearing, the Assistant State Attorney, Joseph Ledonne[,] stated that there was no offer and that the State was seeking life. Thus, Defendant was aware that a capital sexual battery charge carried a penalty of life in prison, and that there was no plea offer from the State. Defendant also knew that if she proceeded to trial the trial judge had no discretion in sentencing her for anything less than life in prison on the capital sexual battery charge. Defendant, knowledgeable of her maximum penalties, after consulting with trial counsel decided that she had nothing to lose by going to trial. Therefore, the Court finds that trial counsel did not advise Defendant that if she proceeded to trial she would only serve a thirty years sentence, and therefore, Defendant has failed to show that trial counsel was deficient.
>
> Defendant also fails to show that she was prejudiced by proceeding to a jury trial. As to the first, second, and third prongs required in *Alcorn*, there was no offer from the prosecutor for trial counsel to advise Defendant of or for the court to accept. Regarding the fourth prong of *Alcorn*, it is also inapplicable because there was no offer. Thus, Defendant fails to show that she was prejudiced.

(*Id.* at 1204–06) (alteration added). The Fifth DCA per curiam affirmed the denial of the claim without a written opinion. (*Id.* at 1521).

Because the Fifth DCA affirmed without a written opinion, the Court presumes the affirmance was based on the state post-conviction court's findings. *See Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018) (holding that where the relevant state court decision on the merits does not provide any rationale for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant

rationale" and "should then presume that the unexplained decision adopted the same reasoning"). As the state post-conviction court decided the claim on the merits, the Court addresses it in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

It is apparent from the testimony during the evidentiary hearing on Vickers's Rule 3.850 motion that Vickers's lawyer never told her that if she proceeded to trial, she would be sentenced to thirty years in prison. Vickers's lawyer testified that before trial, he explained to Vickers that the sexual battery count carried a mandatory life sentence, the State offered nothing less than a life sentence, she had nothing to lose by going to trial, and she could have waived "potential errors or issues" if she entered an open plea. (Doc. 12-1 at 1415–17). He specifically denied telling Vickers that she would get something less than life for the sexual battery charge. (*Id.* a 1422–23). During Vickers's testimony, she admitted her lawyer explained that sexual battery carried a mandatory life sentence and told her that the State was making no

offers. (*Id.* at 1358). Vickers also testified that it was not until months after the trial that her lawyer brought her a plea agreement and told her that the State was offering thirty years. Therefore, Vickers's lawyer was not deficient[6] because he never told Vickers she would receive only thirty years if she proceeded to trial and was convicted. Ground Fifteen is denied.

In her reply, Vickers raises a new claim that her lawyer misadvised her that if she signed the plea agreement pertaining to the charges severed from the two charges at issue in her trial, she would receive only thirty years for the severed counts. (Doc. 14 at 4–5). It wasn't until after she went to prison and reviewed her papers that she realized she was sentenced to "life and 30 years on the plea agreement[.]" (*Id.* at 5). She contends that had she known she would receive a life sentence, she would have rejected the plea agreement and proceeded to trial. (*Id.*).

The Court need not address this claim because Vickers failed to raise it in her Petition. *See Wilson v. United States*, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017) (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[T]his claim was not properly raised until [the] reply brief and, therefore, was not properly before the district court.")); *see also Prada v. United*

[6] *See Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("[W]ithout evidence that [counsel] gave incorrect advice or evidence that [they] failed to give material advice, [the claimant] cannot establish that [counsel's] performance was deficient.") (quotations omitted).

*States*, 692 F. App'x 572, 574 (11th Cir. 2017) (affirming the district court's refusal to consider new arguments raised in a reply brief because petitioner "was barred from raising new claims"); *Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although *pro se* pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a *pro se* litigant in his initial brief are deemed waived[,] . . . [and] we do not address arguments raised for the first time in a *pro se* litigant's reply brief."); *Snyder v. United States*, 263 F. App'x 778, 780 (11th Cir. 2008) (affirming the district court's ruling that a *pro se* petitioner's reply brief could not be construed as an amendment to add an additional claim to the motion to vacate).

Even if the Court were to consider the claim, it would be denied. First, Vickers failed to exhaust the claim in state court. Although she asserted the claim for the first time during the evidentiary hearing on her Rule 3.850 motion, she failed to address the claim on appeal. In her Initial Brief, she raised and argued only her claim that she would not have proceeded to trial on the two severed claims had counsel not misadvised her that she would receive no more than thirty years in prison if convicted. (Doc. 12-1 at 1484–85). Thus, Vickers failed to "give the state courts one full opportunity to resolve [this issue] by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845; *Pope*, 358 F.3d at 854. As such, her

claim is unexhausted and procedurally defaulted, and Vickers has failed to show cause for or prejudice from this procedural default.

Second, the claim fails on the merits. Although Vickers failed to raise this claim in her Rule 3.850 motion, the state post-conviction court recognized that "during the evidentiary hearing held on December 3, 2021, [Vickers] presented argument, and the Court allowed, [her] to enlarge her claim that her plea was involuntary." (Doc. 12-1 at 1204). The state court denied the claim as follows:

> To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. The deficiency prong requires a defendant to show that counsel's errors were so serious that counsel was not in accordance with the type of counsel that the Sixth Amendment guarantees, and therefore deprived the defendant of a fair trial. *Id*. In order to demonstrate prejudice in the context of a guilty or no contest plea, one must establish a reasonable probability that, but for counsel's errors, he or she would have proceeded to trial instead of entering a plea. *Ey v. State*, 982 So. 2d 618, 621 (Fla. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In determining whether there is a reasonable probability that a defendant would have insisted on going to trial, a court should consider "the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial." *Grosvenor v. State*, 874 So. 2d 1176, l181–82 (Fla. 2004).
>
> The Court finds that as it relates to Defendant's plea to a life sentence for capital sexual battery Defendant has failed to show

> that trial counsel was deficient. Trial counsel told Defendant that if she entered a plea to the capital sexual battery charge she would receive a life sentence, not a thirty-year sentence. As stated previously, trial counsel met with Defendant nine times during the course of his representation and on each occurrence Defendant was engaged in the discussions about her case, asked appropriate questions, and understood the proceedings.
>
> Furthermore, Defendant fails to satisfy prejudice. It is highly unlikely that Defendant would have insisted on going to trial. Based on the totality of the circumstances the evidence against Defendant was overwhelming. Appendix B, Trial Transcript, pp. 37, 86, 103, 105, 106, 109, 194, 209. Defendant's defense would also likely not have succeed[ed] at trial. A jury found Defendant guilty of identical charges, with the same facts, evidence and testimony. Appendix C, Jury Verdict. Additionally, the colloquy clearly indicates that Defendant knowingly and voluntarily entered the plea with a complete understanding of the proceeding, the charges and the maximum sentence that she faced. Appendix D, Motion for New Trial, Plea & Sentencing - Appeal, pp. 10–22.
>
> The Court finds that Defendant fails to satisfy the requirements of *Strickland*, and as such, Ground II is denied.

(*Id.* at 1206–07) (alteration added).

As the state post-conviction court decided the claim on the merits, the Court addresses it in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence presented.

Also, the written plea agreement Vickers signed clearly stated that she agreed she would be sentenced to life in prison on Count 46, the sexual battery charge that was not part of her prior trial. (*Id.* at 198–99). During the change-of-plea hearing, Vickers affirmed that she had read the plea agreement, reviewed it with her lawyer, and that no one had promised her anything other than what was included in it. (*Id.* at 1244). She also affirmed that the reason she was entering the plea was that the State agreed that if she were successful on appeal of her trial, she could withdraw from the plea agreement. (*Id.* at 1244–45). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary. *See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). Vickers presented no compelling evidence to the state post-conviction court to suggest her statements at the change of plea hearing were not true.Given Vickers's declarations during the change of plea hearing, coupled with the testimony during the Rule 3.850 evidentiary hearing, Vickers cannot establish prejudice

from any alleged error of her lawyer. The state post-conviction court could reasonably conclude that Vickers understood the implications of the various provisions of the plea agreement, including the agreement to a life sentence on the sexual battery charge. Accordingly, Vickers's claim raised in her reply that her plea was not voluntary is denied.

**D. Ground Sixteen**

Vickers contends that her lawyer was ineffective for failing to have three court-appointed psychologists evaluate her prior to trial. (Doc. 1 at 22–23; Doc. 14 at 5-6). She concedes that her lawyer retained one psychologist, Dr. Stephan Bloomfield, who found that Vickers suffered from neither post-traumatic stress disorder nor battered partner syndrome and did not meet the requirement for intellectual disability. (Doc. 14 at 5). But she asserts that her lawyer should have had two more psychologists evaluate her, who may have found that she has mental health issues that cause her to make irrational decisions and leave her easily susceptible to undue influences. (*Id.* at 6). That finding, according to Vickers, would have been "a potentially successful defense." (Doc. 1 at 22).

Vickers raised this claim in her Rule 3.850 motion. (Doc. 12-1 at 1161). After holding an evidentiary hearing, the state post-conviction court denied the claim as follows:

> In Ground III, Defendant asserts that trial counsel was

ineffective for failing to have three court-appointed psychologists investigate her psychiatric impairments in order to pursue a defense based upon those impairments. She argues that had trial counsel "brought up" the fact that she had not been properly evaluated by three court-appointed psychologists and had her psychiatric impairments been investigated she "may" have had a different outcome.

In appointing experts to determine the mental condition of a defendant, the present rule provides that the court shall appoint *no more than three experts* to evaluate the defendant's mental health. § 916.115(1). Fla. Stat. (2012); Fla. R. Crim. P. 3.210(b) (2012); *see Tita v. State*, 42 So. 3d 838, 840 (Fla. 4th DCA 2010). Section 916.115 of the Florida Statutes was amended in 2005 to remove the language that required a court to appoint no fewer than two experts. *Tita*, 42 So. 3d at 840.

A defendant's right to a fair trial includes the right [to] not be tried or convicted while incompetent. *Dougherty v. State*, 149 So. 3d 672, 676 (Fla. 2014) (citing *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). A defendant's right to be tried while competent is to ensure that the defendant is able to assist counsel in preparing the best defense possible to the crime with which he is charged. *Daniels v. O'Connor*, 243 So. 2d 144, 147 (Fla. 1971). "In determining competency, the test is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.'" *Mairena v. State*, 6 So. 3d 80, 85 (Fla. 5th DCA 2009) (*Hill v. State*, 473 So. 2d 1253, 1257 (Fla. 1985)).

In the instant case, the record reflects that the trial judge only appointed one expert, Dr. Bloomfield, to examine and evaluate Defendant's mental health to aid in her defense. *See* Appendix E, Order for Mental Evaluation. The Court finds that this was in accordance with the present statute and rule that no longer require that a trial judge appoint a specific number of experts to evaluate the mental condition of a defendant § 916.115(1), Fla. Stat.; Fla. R. Crim. P. 3.210(b). Thus, trial

> counsel is not deficient for not obtaining more than one expert to examine Defendant before proceeding to trial. Accordingly, Ground III is refuted as a matter of law.
>
> Additionally, even if Defendant's argument was not refuted as a matter of law, Ground III would still be denied. Dr. Bloomfield's assessment indicated that he did not diagnosis (sic) Defendant with a mental health disorder, and therefore Defendant did not have a diagnosis that brought her competency into question nor aid her in her defense. Appendix F, Assessment. Defendant participated in her case throughout the proceedings, and showed that she had a rational and factual understanding of the case. Furthermore, trial counsel did exactly what he was supposed to do by finding out if there was a good faith basis to make a defense based on the best evidence that he had, including the totality of the circumstance presented to him. Dr. Bloomfield informed trial counsel that Defendant did not have any issues that would aid in a sexual psychological defense. Dr. Bloomfield also informed trial counsel that there was a conflict in that the test scores were above average in that regard. Additionally, Dr. Bloomfield indicated that Defendant is a follower, which is exactly what trial counsel testified to and used in mitigation. Trial counsel engaged with Defendant during the process and Defendant was not confused in any way throughout the case. Trial counsel concluded that there were no grounds that he could bring to support a defense based on psychological factors. The Court finds that trial counsel did everything he was required to do, and then some.

(*Id.* at 1207–09) (emphasis in original) (alteration added). The Fifth DCA per curiam affirmed the denial of the claim without a written opinion. (*Id.* at 1521).

Because the Fifth DCA affirmed without a written opinion, the Court presumes the affirmance was based on the state post-conviction court's findings. *See Wilson*, 584 U.S. at 125–26. As the state post-conviction court decided the claim on the merits, the Court addresses it in accordance with the

deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. (*See, e.g.*, Doc. 12-1 at 1328, 1375–93, 1426–42).

Considering Dr. Bloomfield was a very experienced psychologist whom Vickers's lawyer had used many times before, and considering Dr. Bloomfield was unable to provide any psychological defenses that Vickers's lawyer could use, Vickers's lawyer was not deficient for failing to obtain additional psychologists to evaluate Vickers. *See Elledge v. Dugger*, 823 F.2d 1439, 1447 n.17 (11th Cir.), *opinion withdrawn in part on denial of reh'g*, 833 F.2d 250 (11th Cir. 1987) ("We emphasize that the duty is only to conduct a reasonable investigation. Counsel is not required to 'shop' for a psychiatrist who will testify in a particular way."); *Walls v. Bowersox*, 151 F.3d 827, 835 (8th Cir. 1998) ("Counsel is not required to continue looking for experts just because the one he has consulted gave an unfavorable opinion." (quotation marks and citation omitted)). Also, Vickers fails to demonstrate prejudice because she fails to show a reasonable probability that an expert would have found Vickers had

a psychological defense that would have changed the outcome of the trial. *See Duran v. Walker*, 223 F. App'x. 865, 875 (11th Cir. 2007) ("Duran's claim that an expert witness would have prompted the jury to believe his testimony and disregard the statements he made during the police interview is conclusory and speculative, and does not amount to a showing of prejudice."). Ground Sixteen is denied.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment dismissing this action with prejudice, terminate any pending motions, and close the file.

3. If Vickers appeals this Order, the Court denies a certificate of appealability.[7] Because the Court has determined that a certificate of appealability is not warranted, the Clerk of the Court shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may

---

[7] The court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court denies a certificate of appealability.

be filed in this case. Such termination shall serve as a denial of the motion.

**DONE and ORDERED** at Jacksonville, Florida on September 10, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

SA: TpaP-3
Copies to: Erin Vickers, *pro se*
Counsel of Record